May it please the court. My name is Joe Maloney. I represent Dennis Parker, the appellant in this case. May I invite the court's attention to page 210 of the excerpt of record. The page numbers for the excerpt of record are found at the bottom of the page in the center. Page 210 of the excerpt of record. There you will find the minutes of the Yuba County Water District's board meeting of February the 6th of 1984. At that meeting the board actually interviewed candidates for its general manager's position and offered the position to Mr. Parker. In the minutes that I'm referring to on page 210 towards the bottom, they read that the Director Buelna read the board's offer of the position of manager to Dennis Parker. She stated that in the offer they have closed some of the loopholes in the personnel manual concerning his position. Mr. Parker read the offer, asked how many meetings per month were normal, and then accepted the offer. Director Buelna made the motion to accept Mr. Parker's acceptance as manager as outlined in the agreement. So that's the unique thing about this case. The board, at whose pleasure the district manager serves, unanimously and specifically approved, negotiated his contract. That's found, the piece of paper that they're talking about is found on page 28 of the excerpt of record. Page 28 of the excerpt of record. Paragraph 5 provides that the manager will be subject to all regulations of personnel policies with the following exceptions. Three exceptions are stated that do not apply. The pertinent provision of the personnel manual that is made applicable to the manager is on page 38 of the excerpt of record and states that any employee can be dismissed if there is a valid cause for doing so. Now, we have relied heavily on the Healdsburg decision in which a California court of appeals stated that when there's that kind of a protection from arbitrary termination, even when there is a statute that says that the person serves at the pleasure of the governing body, that a property interest that is protected by due process is created. That was the holding of the Healdsburg decision. Just this morning, I have given to the clerk a supplemental citation to a California supreme court case that I believe holds exactly the same thing. Well, that case talks about the Myers-Millius-Brown Act, which authorizes collective bargaining agreements to protect job rights. So the statute, by implication at least, either creates an exception to the general statute prohibiting contracts or repeals it to the extent of collective bargaining agreements. Yes, Your Honor. It is a Myers-Millius-Brown Act case. The Court wasn't relying on a provision of the collective bargaining agreement but upon the district's personnel policies. Well, it's authorized under Myers-Millius-Brown to have collective bargaining agreements. Yes, Your Honor. I agree. That is a good point. That was not a feature of the Healdsburg case. The Healdsburg case was one in which the Court said, look, the city council delegated the power to create a manual to the police chief. He did so, and he protected the employees from arbitrary termination. They have a protected property interest. And to the extent the city cited the government code provision, which stated that the employees served at the pleasure of the city council, the Court said, look, you're estopped to assert that. Now, that's not contract by estoppel. Mr. Parker's contract is on page 28. The Healdsburg doesn't deal with a contract. It deals with estoppel. That's true, Your Honor. It deals with the personnel manual that protects from prison. It protects you under this theory of estoppel, equitable estoppel, rather than contract. And there are two theories. Yes. One is that you have a contract. Yes. And the other is that you have equitable estoppel. Yes. And the Healdsburg is an equitable estoppel case. It does rely on equitable estoppel. It states that the manual says that there's a protection from arbitrary termination. And to the extent the city is relying on this statute, it's estopped to assert it. Similarly, in this case, the board, which is the body which has, at whose pleasure the manager serves, as is exhibited on page 210 of the excerpt of record, unanimously and expressly made the manager's position subject to the personnel manual, including the protection against arbitrary termination. Let me ask you this. I've been fussing for decades with California employment law. Yes. And public employment law, and I'm not a California lawyer. The statute, the Water Code statute 30540, that says the board, that the general manager, secretary, treasurer, and auditor shall serve at the board's pleasure. Yes. Does that statute, in your view, preclude the board deciding in its discretion that it will establish a contract, a contractual agreement, in order to hire somebody that they want? By no means, Your Honor. Section 30542 is, in my view, part of the grant of authority, broad authority, to enter into contracts to the board, and does not prohibit the board from protecting its general manager from arbitrary termination. Now, of course, if they had decided to specify that he would be at will, this statute would have authorized them to do so. Right. But the point is the statute gives that decision to the board, and the board in this case decided, it's quite rare for the board to decide to do this, but it decided to protect the general manager from arbitrary termination. And small wonder, considering they've had 19 managers in the past 20 years. I mean, they had a very tumultuous history that they wanted to get around. Yeah. And let me ask you this. In his contract, there was he had to serve a probationary period, isn't there? He did, and he got over that. And they actually passed a resolution saying, doing a good job, now he's a permanent employer. Now, during that probationary, what is the difference between what happens when you get past the probationary? At the probationary period, is he serving at the will of the board? I think so. I think that the contractual protection against arbitrary termination was subject to the to the in all reason, it was subject to the probationary period. During the probationary period, I think the reasonable interpretation of the contract was that. But that was not explicit in the contract. No, it wasn't explicit in the contract. But if Dennis had been fired in the first six months, I think he would have been in trouble. But generally, that's what the probationary. Yes, that's what a probationary period is for. It's a period of time during which an employee can be discharged arbitrarily. But he got past that, and they were satisfied with his performance. And then he served for another 21 years. So you're saying that the words, at the pleasure of the board, instead of the usual meaning, which is that the employee is at will, may be modified by a contract by the board. Well, actually, Your Honor, I don't think that the employee ordinarily isn't at will because there's something that says he serves at the pleasure. All employees are at will. What the provision that says that the employee serves at the pleasure of the board, in my view, defines which body has power to depart from the at-will employment. So, you know, there are statutes that say an employee shall be at will. In this Court's decision in Portman, which is one of the cases that was cited, that's a California statute that said that the employee that was involved there had to serve at will. This statute doesn't say that. So I think that the board retained authority to protect its general manager from arbitrary termination and that it did so. May I reserve the rest of my time? Good morning, Your Honors. May it please the Court, Robert Greenfield for Yuba County Water District. I think the case here that's controlling would be Miller v. State of California, which says that public employees serve by statute, not by contract. But more importantly, Miller, as interpreted by this Court in the Portman decision, that said the longstanding principle of California law and held that neither an express nor an implied contract can restrict the reasons for or the manner of termination of public employment provided by California statute. That certainly seems to be what it says on page 905 of Portman. That's correct, Your Honor. And to address your question, a board may enter into a contract with its general manager who serves at their pleasure. And frankly, they do quite often on issues of compensation for when they leave, after they depart, they enter into a contract on how the former general manager will be paid. But Portman certainly holds that they cannot enter into a contract that changes the very status of his employment from at will to for cause or the manner in which he could be terminated. And I believe that this Court has upheld the Miller standard several times, and along with Portman, since it's being – since the opinion was issued. And Miller states, indeed, the statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict herewith. All right. Your opponent has devoted in his brief a great deal of time to the Healdsburg case. You discussed it very little. Do you want to make any more comments on the application of the Healdsburg case? Certainly, Your Honor. I think Judge Reinhardt hit the nail on the head with Healdsburg was a strike issue where these officers were terminated because of the participation in the strike, and the Myers-Milius-Brown Act became a big issue to the Court. And in Healdsburg, the important distinction in Healdsburg is it wasn't the chief of police who was terminated. It was the officers of the – in the department who were being terminated. Healdsburg might have a different result if the issue was that the chief, the head of the police department, had been terminated. And so I don't think – Why is that of legal significance? It's legal significance, Your Honor, because the general manager is a job that is created by the statute. It is, in fact, the only job that a water district need have. The statute mandates that the very first act of the water district board is to appoint a general manager. There's no – nothing that mandates any other employees, but that one employee, his job or her job exists because a statute mandates that it exists. So the mandating of the position sets the terms and conditions as that will. I guess I don't really – your client is who? My client is the Yuba County Water District. And who was the employer here? The Yuba County Water District. And who was a party to the contract here? The Yuba County Water District. And you are now disavowing provisions in that contract saying that they are not authorized by the statute. Is that where we are? That is not where we are. I disavow that there is a contract. What? I don't believe that there was a contract, that the – that the letter of 1984 doesn't constitute a contract. Is it a claimant? It's a terms of your employment. It's the compensation terms of your employment. It's not a – it's not a contract that changes you – your status from at will to for cause. You're not bound by it? Well, as Mr. Parker testified, every term in that letter had changed over the course of the employment. Well, of course you can amend the contract. Well, I don't – and I don't believe that you're bound, that I believe because you serve, the general manager serves at the will of the board, at any board meeting where a majority of the board can – can terminate Mr. Parker at any point – or any general manager. Well, are these minutes accurate that you negotiate that there was – there were negotiations with him? The minutes are accurate, yes. Yeah. Well, you know, if you hire somebody that you want and you enter into an agreement and you negotiate with the person to come and work for the – for the county in this capacity, which is a very responsible capacity and which is also a very sensitive position, I would assume in California because of all kinds of problems, then don't you really think that people would expect you to live by that and not then say, oh, well, we didn't have the authority to do this at all? Huh? After he's relied on it and you thought that in good faith, I assume, that you had – your client had provisions there that you were going to live up to? I would expect anyone who takes a job that says I serve at the will of the board knows that at any board meeting, if a majority decides that they are no longer happy with his or her performance, that their job would be over. Well, what is the – what does the personnel manual say about service and when it can be terminated? The personnel manual at 1984 said that you would have to have good cause. And what does it say now? I believe now in 2008 – I'm not sure, to be honest with you. All right. Let's assume it says the same thing. And if you enter into an agreement, a letter signed by both sides that you've negotiated, and it says you're subject to the personnel manual, and then you say except for certain things, and the personnel manual says you can be terminated for cause, why isn't that a provision that either constitutes support of your contract? And if you're saying it's an invalid contract, then why under Healdsburg aren't you estopped? I believe that the board cannot negotiate a contract that is contradictory to the law, and that the law clearly in Portman and in other cases I've held that the contract cannot change the basic substance of the employment. If you're right on that, then you would get to Healdsburg, which says that under those circumstances, you're estopped. I don't think you do, Your Honor, because – No. Because – What is the difference? He started out with the difference from Healdsburg is that he's in a higher position. Well, and that his job is created by a statute. In Healdsburg, the officer's jobs were not created by the very statute that holds that they are at will. Well, I assume that police officers' jobs are created by statute in the sense that the city is mandated to provide safety. Correct. And – but in Healdsburg, they went through a collective – they went through an organized bargaining unit and a union and negotiated the terms and conditions of those officers' employment through the union. And here he did it individually. And here he did it as an individual, but he cannot negotiate around the statute. The very substance of his job is the statute, which says you are at will. How could they negotiate around the statute with the union in Healdsburg? Well, they can make it as a term and can – the statute in Healdsburg – there was a statute that's – there was a regulation that said all officers are at will. But in Healdsburg, the union set forth the terms and conditions of their employment. In here, in this situation, it's not a union issue. It's a job that's created by the statute, and that it can't under Portman change the very nature of that job. Aren't you concerned for the future about attracting good people to positions like this if you can't – if at the pleasure means that there's nothing that you can do in order to give any contractual inducements to have them come by way of giving any kind of tenure? There's currently over 400 water districts in the State of California, all of them created by the same statute, all regulated by the same statute. As best as I know, there's turnover, there's changes, but there's never a – No, that's not in this record. I mean, this record shows that they wanted this person. That's right. And they negotiated with them in order to get him. And one of the things they negotiated, presumably, was that he would have – that there would be costs. And I don't understand, you know, what – in this record, why you wouldn't be concerned in the future. Why you wouldn't want to think, well, gee, we ought to do that. Because the statute – The statute, yeah. The statute speaks for itself, Your Honor. It's just – it's – You're arguing the law.  The law is clear. As you – when you take a job that's created by the statute, it seems you should know what – what the job is you're taking. I don't understand the difference between that and having a statute in Healdsburg which didn't allow the provision. And they said that when you have a statute that doesn't allow a provision and a public employee is hired and told that he has certain rights and it's part of the personnel manual, that you're stopped from saying you don't have the right that you gave him in the personnel manual. But the statute in Healdsburg didn't create the job itself. So what? What's the difference? The statute gives and the statute takes away. All right. I think we understand what you're saying. Okay. Well, that's a pretty good ending. Yeah. May I please make one point about the Portman decision? As Your Honor points out, Judge Nelson, it does say that there's this language, this very broad-sounding language about contracts, express or implied. But let's please not forget that what was going on in Portman was that there was no actual contract. The public defender had no actual contract to rely upon. Implied in fact. Implied in fact. So I think that's important. I mean, in this case. Because? Because in this case, this Board is authorized by statute, by Section 31001 to enter excuse me, 31004, to enter into contracts and employ labor. So this is a different kind of statutory scheme than you would see like in Miller. Miller is a statutory scheme that defines civil service employment terms and conditions. This is a statutory scheme that says you get to define the terms and conditions for your own employees. We're giving you that power. So it's a broad power. And I believe that the district is putting way too much freight in the provision that says that the general manager serves at the pleasure of the Board and saying that that means that the district doesn't have discretion. It must provide that that person will serve at will. It doesn't say that. And there are statutes that say it will. So the legislature knows how to use those words. So I think that this is a grant of authority rather than a restriction on discretion. And I would just also like to point out about the Healdsburg case. That wasn't a provision that was negotiated by the union. The facts are very clear. The city council delegated its authority to make a manual to the chief of police, and the chief of police issued a manual that protected his staff from arbitrary termination. Good idea. It creates a protected property interest. Okay. Thank you for your attention. Thank you. The case just argued is submitted for decision. Court appreciates the arguments given. And we will hear the next case, which is for argument, which is Coles v. Aramak Sports and Entertainment Group.
judges: Schroeder, Nelson, Reinhardt